**Michael PERNA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civil Action No. 97–2111 (AJL).

Criminal Nos. 92–723–05 (AJL), 93–45–01 (JEI).

United States District Court, D. New Jersey.

July 21, 1997.

Lawrence S. Lustberg, Anthony P. Callaghan, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Plaintiff.

Faith S. Hochberg, United States Attorney, Colette R. Buchanan, Assistant United States Attorney, Office of the United States Attorney, Newark, NJ, for Defendant.

**LECHNER, District Judge**

Petitioner Michael Perna ("Perna"), presently incarcerated at the Lewisburg Federal Penitentiary in Pennsylvania, brings this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255 ("Section 2255").[1] For the reasons set forth below, the Habeas Petition is denied; there is no probable cause for appeal.

*Facts*

### I. The Gambling Plea

On 3 October 1992, Perna was arrested on gambling charges. *See* Perna Brief at 1. On 26 January 1993, a Federal grand jury indicted Perna on illegal gambling and related charges (the "Gambling Indictment"). *See* Government Brief at 1. The case, *United States v. Perna*, Criminal No. 93–45–01(JEI) (the "Gambling Case"), was assigned to the Hon. Joseph E. Irenas, U.S.D.J. for trial.

On 26 July 1993, Perna pleaded guilty before Judge Irenas (the "Gambling Plea") to count two of the Gambling Case charging a violation of 18 U.S.C. § 1955 ("Section 1955").[2] *See* transcript of plea hearing (the "Gambling Plea Hearing") before Judge Izenas (the "Gambling Plea Tr.") at 18–19. At that time, as will be discussed, Perna was specifically advised by Judge Irenas the maximum statutory sentence for violation of Section 1955 was five years with a fine of $20,-000. *See* Gambling Plea Tr. at 20. Perna was also advised "it may be impossible for [his] attorney to make a completely accurate assessment as to the guidelines range which will apply in [his] case...." Gambling Plea Tr. at 23. Perna was represented by John Tiffany, Esq., of the Law Offices of Michael Critchley & Associates at the Gambling Plea Hearing. *See* Gambling Plea Tr. at 5; Habeas Petition at 8. The case was scheduled for sentencing before Judge Irenas on 24 September 1993. *See* Gambling Plea Tr. at 41.

---

1. Perna submitted: Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Habeas Petition"); Petitioner Michael Perna's Brief in Support of his Motion to Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255 (the "Perna Brief"); letter of Lawrence S. Lustberg and Anthony P. Callaghan, dated 20 June 1997 (the "Reply Brief"); and Certification of Anthony P. Callaghan (the "Callaghan Cert.") with Exhibits A through C attached.

The Government submitted: letter of Colette R. Buchanan, dated 11 June 1997 (the "Government Brief") with Exhibits A and B attached.

2. Perna did not enter into a written plea agreement with the Government in connection with the Gambling Plea. *See* Gambling Plea Tr. at 6.

## II. *The RICO Act Plea*

On 29 December 1992, a Federal grand jury indicted Perna and eight others in an eighty-four count indictment charging them with violations of the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act"), 18 U.S.C. § 1961 *et seq.*, and related offenses (the "RICO Case"). *See* Indictment in *United States v. Juliano,* Criminal No. 92–723(AJL) (the "RICO Indictment"); *see also United States v. Juliano,* 947 F.Supp. 777, 779 (D.N.J.1996). The RICO Indictment detailed a fraudulent billing and kickback scheme involving the City of Newark, Division of Sanitation. *See* RICO Indictment.

On 20 September 1993, pursuant to a written plea agreement (the "RICO Plea Agreement"), Perna entered a plea of guilty to a RICO Act charge (the "RICO Plea") contained in a superseding information charging him with participation in the affairs of an enterprise, the New Jersey Faction of the Lucchese crime family, through a pattern of racketeering. *See* transcript of plea hearing (the "RICO Plea Hearing"), held 20 September 1993 (the "RICO Plea Tr.") at 26–38, attached as Exhibit B to the Government Brief; Plea Agreement at 1, attached as Exhibit A to the Government Brief. Perna admitted to membership in the Lucchese crime family, a decade of extortion of an air freight company, operating an illegal video gambling business, jury tampering and multiple murder conspiracies resulting in the deaths of seven individuals:

[THE GOVERNMENT] Mr. Perna, during the time period covered by the information, that is during the period of approximately January 1st, 1976 through today, were you employed by or associated with the New Jersey Faction of the Lucchese crime family?

[PERNA] Yes.

[THE GOVERNMENT] During the same time period, in the District of New Jersey, did you conduct and participate in the conduct of the affairs of the New Jersey Faction through a pattern of racketeering, which included bribery, extortion, conspiracy to commit murder and obstruction of justice?

[PERNA] Yes.

\*    \*    \*    \*    \*    \*

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately 1976 in New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposefully causing the death of Richard DeMary?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately October, 1977, in New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposely causing the death of Gregory Minichino?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of the conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately August, 1980, in New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposefully causing the death of Pat Morran?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately December, 1980, in New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposefully causing the death of a white male, named Ray, whose last name is unknown?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of the conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately 1982 or 1983, in Newark, New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposefully causing the death of an unidentified black male numbers writer?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction in approximately July, 1990, in New Jersey, did you conspire and agree with other members of the New Jersey Faction to commit murder by purposefully causing the death of John Redman?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, during the time period of approximately September, 1990 through September, 1993, in New Jersey, did you conspire and agree with other members of the New Jersey Faction to murder Thomas Ricciardi, Daniel Ricciardi, Anthony Accetturo, Anthony Accetturo, [Jr.], Joseph LaMorte, Joseph Ricciardi, Daniel Miano and Nicholas Stefanelli?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] In furtherance of the affairs of the New Jersey Faction, in approximately January, 1992, in New Jersey, did you conspire and agree with other persons to commit murder by purposefully causing the death of Anthony Cuozzo?

[PERNA] Yes.

[THE GOVERNMENT] Did you, thereafter, commit an overt act in furtherance of this conspiracy?

[PERNA] Yes.

[THE GOVERNMENT] During the time period of approximately June through July, 1990 in the District of New Jersey, were you aware of a proceeding in a court of the United States, specifically the district court for the District of New Jersey, namely the trial of United States v. John Riggi, et al?

[PERNA] Yes.

[THE GOVERNMENT] During that time period, in furtherance of the affairs of the New Jersey Faction, did you corruptly endeavor to influence and impede a juror in that trial?

[PERNA] Yes.

[THE GOVERNMENT] In that juror's discharge of his duties?

[PERNA] Yes.

[THE GOVERNMENT] Of his or her duties?

[PERNA] Yes.

[THE GOVERNMENT] During the time period of approximately November, 1986 through November, 1988, did you participate in a proceeding in the district court for the District of New Jersey, namely the trial of United States v. Anthony Accetturo, et al?

[PERNA] Yes.

[THE GOVERNMENT] During the same time period, in furtherance of the affairs of the New Jersey Faction, did you aid and abet the corrupt endeavor to influence and impede a juror in that trial, and that juror's discharge of his or her duties in that manner through the payment of bribes to that juror?

[PERNA] Yes.

[THE GOVERNMENT] Did you do all of these acts willingly and willfully?

[PERNA] Yes.

*See* RICO Plea Tr. at 26–34.

Despite the horrific nature of Perna's crimes, pursuant to the RICO Plea Agreement, Perna faced a maximum of twenty years in prison on the RICO Plea. RICO

Plea Agreement at 2. As will be discussed, however, the RICO Plea Agreement also provided the Government would move to transfer the Gambling Case to this court for sentencing. RICO Plea Agreement at 4. Significantly, the RICO Plea Agreement specifically stated the Government's intention to move to have Perna sentenced to the maximum five year sentence pursuant to the Gambling Plea and the maximum twenty year sentence pursuant to the RICO Plea and to have the sentences run consecutively. *See id.* Subsequently, the two cases were consolidated for sentencing. *See* transcript of sentencing hearing for the Gambling Case and the RICO Case (the "Consolidated Sentencing Hearing") held 25 July 1994 (the "Consolidated Sentencing Tr.") at 5–6, attached as Exhibit C to the Callaghan Cert.

On 25 July 1994, Perna was sentenced to consecutive terms of five years on the Gambling Plea and twenty years on the RICO Plea. *See* Consolidated Sentencing Tr. at 25. Perna was represented by Miles Feinstein, Esq. ("Feinstein"), at both the RICO Plea Hearing and the Consolidated Sentencing Hearing. *See* RICO Plea Tr. at 2; Consolidated Sentencing Tr. at 2.

On 28 June 1995, Perna's sentence was affirmed. *See United States v. Perna,* 61 F.3d 897 (3d Cir.1995). On 2 October 1995, Perna's writ of certiorari was denied by the Supreme Court. *See Perna v. United States,* — U.S. —, 116 S.Ct. 231, 133 L.Ed.2d 159 (1995).

As indicated, Perna filed the Habeas Petition pursuant to Section 2255. Perna argues he received ineffective assistance of counsel in violation of his Sixth Amendment rights. *See* Perna Brief at 5. Specifically, Perna alleges three instances of ineffective counsel: (1) his counsel promised that the sentence for the Gambling Plea would not exceed thirty-three months, (2) his counsel promised the RICO Plea would only expose him to a maximum of twenty years in prison, and (3) his counsel promised him that consolidation of the Gambling Plea and RICO Plea for sentencing would not expose him to consecutive sentences on the two charges. *See* Perna Brief at 7.

*Dscussion*

### I. Necessity of an Evidentiary Hearing

"The discretion of the district court summarily to dismiss a motion under [Section] 2255 is limited to cases where the motion, files, and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994) (citing *United States v. Day,* 969 F.2d 39, 41–42 (1992) (internal quotations omitted)). "The question whether to order an evidentiary hearing is committed to the sound discretion of the district court." *Government of Virgin Islands v. Bradshaw,* 726 F.2d 115, 117 (3d Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984), *modified by United States v. Dawson,* 857 F.2d 923, 928(3d Cir.1988) ("If a-nonfrivolous [ineffective assistance of counsel] claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing."); *Page v. United States,* 462 F.2d 932, 933 (3d Cir.1972). Only where the petitioner's allegations raise an issue of material fact is a court required to hold an evidentiary hearing. *United States v. Biberfeld,* 957 F.2d 98, 102 (3d Cir.1992); *United States v. Costanzo,* 625 F.2d 465, 468 (3d Cir.1980), *appeal after remand,* 740 F.2d 251 (3d Cir. 1989), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). Where the record indicates the claim for relief is without merit, the "refusal to hold a hearing will not be deemed an abuse of such discretion." *Government of Virgin Islands v, Nicholas,* 759 F.2d 1073, 1075 (3d Cir.1985); *see Page,* 462 F.2d at 933.

For the reasons that will be discussed below, the Habeas Petition is denied. Because the claim for relief is without merit, a evidentiary hearing is not required. *Nicholas,* 759 F.2d at 1075.

### II. Standard of Review under Section 2255

Section 2255 provides a means of collaterally attacking a sentence imposed after a conviction. *United States v. Cannistraro,* 734 F.Supp. 1110, 1119 (D.N.J.), *aff'd mem.,* 919 F.2d 133 (3d Cir.1990), *aff'd mem.,* 919 F.2d 137 (3d Cir.1990), *cert. denied,* 500 U.S.

916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991). Section 2255 provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .

28 U.S.C. § 2255.

■■■■ "The purpose of Section 2255 was to require a[F]ederal prisoner to exhaust his remedies in the courts of the District and Circuit in which he was convicted and sentenced, and to apply to the Supreme Court, on Certiorari from a denial of such remedies, before seeking release on *habeas corpus.*" *Crismond v. Blackwell*, 333 F.2d 374, 377 (3d Cir.1964); *see also Millan–Diaz v. Parker*, 444 F.2d 95, 96 (3d Cir.1971); *Application of Galante*, 437 F.2d 1164, 1165 (3d Cir.1971). Strong interests in the finality of judgments prevents an error, which may justify reversals on direct appeal, from supporting a collateral attack on a final judgment. *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir.) (quoting *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979)), *cert. denied,* —— U.S. ——, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995).

■■ Accordingly, the grounds for collateral attack of a sentence pursuant to Section 2255 are narrowly limited. *Biberfeld,* 957 F.2d at 102; *Addonizio,* 442 U.S. at 184, 99 S.Ct. at 2240. The Circuit has recognized "not all non-constitutional errors in criminal proceedings enable a prisoner to bring an action under [Section] 2255 for relief." *Diggs v. United States,* 740 F.2d 239, 242 (3d Cir.1984); *accord United States v. Vancol,* 778 F.Supp. 219, 222 (D.Del.1991), *aff'd,* 970 F.2d 901 (3d Cir.1992).

■■ A motion under Section 2255 will be granted "only if the sentence results in 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Cannistraro,* 734 F.Supp. at 1119 (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, *reh'g denied,* 369 U.S. 808, 82 S.Ct. 640, 7 L.Ed.2d 556 (1962)); *Addonizio,* 442 U.S. at 185, 99 S.Ct. at 2240; *United States v. DeLuca,* 889 F.2d 503, 506 (3d Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3222, 110 L.Ed.2d 669 (1990); *Vancol,* 778 F.Supp. at 222–23. Similarly, errors of fact will not provide a basis for relief unless "'the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid.'" *Addonizio,* 442 U.S. at 185–86, 99 S.Ct. at 2240–41 (quoting *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914)).

The Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816, *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *see Addonizio,* 442 U.S. at 184–85, 99 S.Ct. at 2239–40; *Nicholas,* 759 F.2d at 1074 ("A [S]ection 2255 petition is not a substitute for an appeal").

■■■■ A petitioner's failure to raise a particular error either at trial or on direct appeal generally precludes the assertion of that error for the first time in a collateral attack under Section 2255. *See United States v, Essig,* 10 F.3d 968, 979 (3d Cir. 1993); *United States v. DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994); *United States v. Osser,* 864 F.2d 1056, 1061 (3d Cir.1988); *United States v. Grasso,* 468 F.Supp. 264, 266 (E.D.Pa.), *aff'd,* 612 F.2d 575 (3d Cir.1979). Where a petition is predicated upon information known by the defendant and his counsel at the time of the trial or at a point at which an appeal could have been taken, such knowledge is fatal to a Section 2255 claim. *See Biberfeld,* 957 F.2d at 104; *Brown v. United States,* 556 F.2d 224, 227 (3d Cir.1977); *see also United States v. Keller,* 902 F.2d 1391, 1393–94 (9th Cir. 1990); *Chin v. United States,* 622 F.2d 1090

(2d Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981).

Where a Section 2255 motion rests on issues not raised at trial or on direct appeal, the *petitioner* bears the burden of demonstrating both "cause" to excuse the procedural default and that "actual prejudice" will result from the errors at issue.[3] *Frady,* 456 U.S. at 167, 102 S.Ct. at 1594; *Essig,* 10 F.3d at 979; *DeRewal,* 10 F.3d at 105 n. 4; *Biberfeld,* 957 F.2d at 104.

"[T]he existence of cause for a procedural default must ordinarily turn on whether some objective factor *external to the defense* impeded counsel's effort to comply with the ... procedural rule." *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645 (emphasis added); *see Essig,* 10 F.3d at 979. The Supreme Court has explained:

> Objective factors that constitute cause include "interference by officials" that makes compliance with [the exhaustion requirement] impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." In addition, constitutionally "ineffective assistance of counsel ... is cause." Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.

*McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (quoting *Murray,* 477 U.S. at 486–88, 106 S.Ct. at 2644–45), *reh'g denied,* 501 U.S. 1224, 111 S.Ct. 2841, 115 L.Ed.2d 1010 (1991).

To establish prejudice, the petitioner must show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage ...." *Frady,* 456 U.S. at 170, 102 S.Ct. at 1596 (emphasis in original); *see Biberfeld,* 957 F.2d at 105.

In addition, a Rule 11 colloquy may, under certain circumstances, obviate a subsequent [Section] 2255 hearing if the plea reception record discloses that (1) the defendant states-that no promise, representation, agreement, or understanding was made or that none other than that disclosed in open court was made to him by any person prior to the entry of the plea, and (2) the defendant affirmatively states that no out of court promise, representation, agreement or understanding required the defendant to respond untruthfully or contrary to the terms thereof in the in-court reception proceedings, and (3) that the defendant understands that he may not at a later time contend that any promises, representation, agreement or understanding was made by any person than that set forth in open court.

*United States v. Valenciano,* 495 F.2d 585, 587–88 (3d Cir.1974).

### III. *Ineffective Assistance of Counsel*

Perna argues he was denied effective assistance of counsel. A defendant has a Sixth Amendment right, not just to counsel, but to "reasonably effective counsel." *Day,* 969 F.2d at 42 (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)); *Wells v. Petsock,* 941 F.2d 253, 259 (3d Cir.1991), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 906 (1992). To establish a claim for ineffective assistance of counsel, a defendant

> [f]irst ... must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *see also United States v. Kauffman,* 109 F.3d

---

**3.** The Supreme Court has established a narrow exception to this rule. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a [F]ederal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The allegations in the Habeas Petition, and the facts underlying the Gambling Plea and the RICO Plea, do not implicate this narrow exception.

186, 190 (3d Cir.1997); *Wells,* 941 F.2d at 259. Pursuant, to this test, a litigant claiming ineffective counsel "must prove both incompetence and prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65); *Berryman v. Morton,* 100 F.3d 1089, 1094–95 (3d Cir.1996).

■ The first prong of the *Strickland* test requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064; *Berryman,* 100 F.3d at 1094. The Supreme Court stated:

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.... The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *see also Kauffman,* 109 F.3d at 190; *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 296 (3d Cir.) (defense counsel cannot be deemed ineffective just because counsel is not successful), *cert. denied,* 502 U.S. 902, 112 S.Ct. 280, 116 L.Ed.2d 232 (1991).

■ The second prong of *Strickland* requires the defendant to demonstrate "that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman,* 477 U.S. at 374, 106 S.Ct. at 2582. In *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court explained:

An analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Id.* at 369–70, 113 S.Ct. at 842–43. Accordingly, the prejudice component of an ineffective assistance determination "focuses on the question [of] whether counsel's deficient performance renders the result of trial unreliable or the proceeding unfair." *Id.* at 372, 113 S.Ct. at 844.

■ In analyzing Perna's claims of ineffective assistance of counsel, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2069; *Moore v. Deputy Comm'r(s) of SCI–Huntingdon,* 946 F.2d 236, 246 (3d Cir.1991), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1509, 117 L.Ed.2d 647 (1992). Courts must "indulge a strong presumption that counsel's challenged conduct falls within the range of reasonable professional assistance." *Id.; see also Kauffman,* 109 F.3d at 189; *Reese v. Fulcomer,* 946 F.2d 247, 257 (3d Cir.1991), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992); *Moore,* 946 F.2d at 246; *United States v. Gray,* 878 F.2d 702, 710 (3d Cir. 1989).

■ The two-pronged *Strickland* test also applies to an analysis of ineffective counsel with regard to entering a guilty plea. *See Hill v. Lockhart,* 474 U.S. 52, 56–59, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985); *Kauffman,* 109 F.3d at 190; *Meyers v. Gillis,* 93 F.3d 1147, 1153 (3d Cir.1996); *Nahodil,* 36 F.3d at 326; *Zilich v. Reid,* 36 F.3d 317, 320–21 (3d Cir.1994). Within the plea context, "[w]hen such persons enter a plea of guilty on the advice of counsel, the voluntariness of the plea depends on whether there is a reasonable probability that, but for counsel's errors, the defendant would have proceeded to trial instead of pleading guilty." *Kauffman,* 109 F.3d at 190 (citing *Parry v. Rosemeyer,* 64 F.3d 110, 118 (3d Cir.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996)).

As discussed, a petitioner's failure to raise a particular error on direct appeal generally precludes the assertion of that error for the

first time in a collateral attack under Section 2255 unless the petitioner can demonstrate "cause and prejudice." *See Frady,* 456 U.S. at 167, 102 S.Ct. at 1594; *Davis v. United States,* 411 U.S. 233, 243–45, 93 S.Ct. 1577, 1583–84, 36 L.Ed.2d 216 (1973); *DeRewal,* 10 F.3d at 105 n. 4; *Essig,* 10 F.3d at 979; *Biberfeld,* 957 F.2d at 104. The Circuit, however, has held that petitioners are not required to show "cause and prejudice" for their failure to raise an ineffective assistance of counsel claim on direct appeal. *DeRewal,* 10 F.3d at 103–04.

### A. *Gambling Plea*

■ Perna first argues his counsel was ineffective with regard to the Gambling Plea. *See* Perna Brief at 7; Reply Brief at 3. Perna states counsel informed him his maximum exposure by entering the Gambling Plea was thirty-three months and, accordingly, his plea was not voluntary. *See* Habeas Petition at 6.

■ Perna stated, under oath, however, he understood he faced a maximum sentence of five years when he entered the Gambling Plea. Statements made by a defendant under oath in open court are considered to have a strong presumption of truth. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). At the Gambling Plea Hearing, Perna was informed of the maximum sentence:

> [THE COURT] YOU UNDERSTAND THAT VIOLATIONS OF SECTION 1955 CHARGED IN THE INDICTMENT, IN THE SECOND COUNT OF THE INDICTMENT YOU ARE PLEADING TO, CARRIES A STATUTORY MAXIMUM PENALTY OF FIVE YEARS IMPRISONMENT AND A $20 THOUSAND DOLLAR FINE.

> \*    \*    \*    .    \*    \*    \*

> *[PERNA] YES.*

Gambling Plea Tr. at 20 (emphasis added, capitals in original).

At the Gambling Plea Hearing, Perna also acknowledged he understood it was impossible to determine what his sentence might be within the Federal Sentencing Guidelines (the "Sentencing Guidelines") and that he discussed this with his attorney:

> [THE COURT] HAVE YOU DISCUSSED THE SENTENCING GUIDELINES WITH YOUR RESPECTIVE ATTORNEYS?

> \*    \*    \*    \*    \*    \*

> *[PERNA] YES, SIR.*

> [THE COURT] DO YOU UNDERSTAND AT THIS POINT IT MAY BE IMPOSSIBLE FOR YOUR ATTORNEY TO MAKE A COMPLETELY ACCURATE ASSESSMENT AS TO THE GUIDELINES RANGE WHICH WILL APPLY IN YOUR CASE, ONE, BECAUSE HE DOES NOT HAVE ALL OF THE NECESSARY INFORMATION, AND HAS NOT SEEN THE PRESENTENCE REPORT?

> \*    \*    \*    \*    \*    \*

> *[PERNA] YES.*

> [THE COURT] HE HADN'T SEEN IT BECAUSE IT'S NOT BEEN PREPARED, YET. HE COULDN'T POSSIBLE (sic) HAVE SEEN IT.

> DO YOU UNDERSTAND—*AND LISTEN TO THIS ONE, THAT YOU WILL NOT BE ABLE THE WITHDRAW YOUR PLEA ON THE GROUND THAT ANYONE'S PREDICTION AS TO THE GUIDELINES RANGE PROVED TO BE INACCURATE, UNDERSTAND THAT?*

> *[PERNA] YES. SIR.*

> [THE COURT] I'LL ASK IT ANOTHER WAY.

> *DO YOU UNDERSTAND THAT IF YOU ARE UNHAPPY WITH THE SENTENCE WHICH COMES OUT AT THE END OF THE DAY, THAT IS NOT A GROUND FOR WITHDRAWING YOUR PLEA?*

> *[PERNA] YES, SIR.*

Gambling Plea Tr. at 23–24 (emphasis added, capitals in original).

Perna further acknowledged he was promised nothing in exchange for his plea other than the first count of the Gambling Indictment would be dismissed and that he would be allowed to voluntarily surrender:

[THE COURT] HAS ANYONE PROMISED YOU ANYTHING IN RETURN FOR YOUR GUILTY PLEA EXCEPT FOR THE TWO SPECIFIC STIPULATIONS WHICH I THINK WILL BE MADE, WHICH IS AT SENTENCING THE GOVERNMENT WILL MOVE TO DISMISS THE FIRST COUNT OF THE INDICTMENT AND THAT THE SECOND ONE WILL BE AGREED UPON, VOLUNTARY SURRENDER FOLLOWING SENTENCING, SO LONG I MIGHT ADD, AS THERE IS NO CONDUCT INCONSISTENT WITH THAT?

\* \* \* \* \* \*

[PERNA] YES, SIR.

\* \* \* \* \* \*

[THE COURT] NOW, OTHER THAN TO REPEAT IT NOW, WE KNOW WHAT THE ONLY PROMISES ARE ON THE RECORD ARE VOLUNTARY SURRENDER, MOTION TO DISMISS THE FIRST COUNT, AND I GUESS MIGHT CALL IT DISAGREEMENT AS TO MR. MICHAEL PERNA, NOT TO PUSH FOR AN IMMEDIATE SENTENCING, BUT LET THE OTHER TRIAL GO FORWARD.

OTHER THAN THOSE SPECIFIC THINGS, ARE THERE ANY OTHER KINDS OF PROMISES OR INDUCEMENTS GIVEN BY THE GOVERNMENT—FOR THAT MATTER ANYBODY ELSE TO INDUCE YOU THE (sic) ENTER THIS PLEA OF GUILTY?

\* \* \* \* \* \*

*[PERNA] NO, SIR*

Gambling Plea Tr. at 28–29, 31 (emphasis added, capitals in original).

From his admissions at the Gambling Plea Hearing, it appears Perna was fully aware the maximum sentence he faced by entering into the Gambling Plea was five·years. Even if Perna's attorney had promised him a sentence of thirty-three months, as contended, the transcript reveals that Perna was aware his attorney could make no such promise.

Perna clearly indicated on the record he understood his attorney could make no assessments or promises as to his possible sentence. Perna also acknowledged he understood the Sentencing Guidelines were not binding upon the court:

[THE COURT] DO YOU UNDERSTAND THE COURT HAS THE RIGHT ... TO DEPART FROM THE SENTENCING GUIDELINES IN FIXING YOUR SENTENCE BY IMPOSING A SENTENCE GREATER THAN THE MAXIMUM GUIDELINES OR SENTENCE LESS THAN THE MINIMUM GUIDELINES?

\* \* \* \* \* \*

[PERNA] YES.

Gambling Plea Tr. at 22–23 (emphasis added, capitals in original). Accordingly, it appears Perna has not established ineffective assistance of counsel in connection with the Gambling Plea.

■ Perna also argues his counsel was ineffective because he did not consider the implications of the RICO Case in promising Perna a thirty-three month sentence. *See* Reply Brief at 5. In support of this position, Perna cites *Nahodil,* 36 F.3d 323.

Perna's reliance upon *Nahodil,* however, is misplaced because it is factually distinct from the instant matter. The petitioner in *Nahodil* showed reluctance to plead guilty at the plea hearing, interrupting the proceedings several times to confer with his attorney and attempting to enter a plea of *nolo contendere. Nahodil,* 36 F.3d at 326. The Circuit held the Petitioner's "desire to have stood trial ha[d] a plausible foundation in the record...." *Id.* at 327. It was this set of facts that led the *Nahodil* court to remand the habeas petition for further proceedings. *See id.*

As indicated in the record, Perna did not express any reluctance in entering the Gambling Plea. In addition, at the time the Gambling Plea was entered, it appeared the RICO Case was going to go to. trial. *See* Gambling Plea Tr. at 29. As will be discussed, the RICO Plea Agreement, which indicated the intention of the Government to move for consolidation and for consecutive sentences, arose only later as part of Perna's negotiations regarding the RICO Case. *See* Government Brief at 9. Counsel for Perna

could not have anticipated these later events. Even if counsel had been in a position to anticipate these events, Perna has not demonstrated the manner in which the advice to plead guilty fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064; *Berryman*, 100 F.3d at 1094.

### B. *RICO Plea*

█ Perna also argues he received ineffective assistance of counsel with regard to the Rico Plea. *See* Perna Brief at 8; Reply Brief at 2. Perna argues that, had he been informed by his attorney that he faced more than twenty years when he pleaded guilty to the RICO Indictment, he would have demanded a jury trial. *See* Perna Brief at 8.

The record, however, undercuts this argument. The RICO Plea Agreement specifically stated the Government would move for consolidation of the Gambling Case and the RICO Case. The Plea Agreement provided:

[T]his Office will move for the transfer of Indictment 93–45(JEI) to Hon. Alfred J. Lechner[, Jr.] for sentencing. At the time of sentence we will ask the Court *to impose the maximum five year sentence* for the [gambling] offense charged in Indictment 93–45 and to make it *consecutive* to the sentence on the RICO offense for a *total* of *twenty-five years.* This will be possible because the guideline level offense will exceed the statutory maximum of twenty years.

RICO Plea Agreement at 4 (emphasis added)

During the RICO Plea Hearing, Perna indicated he read and understood the RICO Plea Agreement:

[THE COURT] All right.

Now, take a look at that written plea agreement. On the last page or the next to last page above your typed written name, is that your signature?

[PERNA] Yes, it is.

[THE COURT] *And when did you sign that?*

[PERNA] This morning.

[THE COURT] And before you signed it, did you have an opportunity to read it?

[PERNA] Yes, I did.

[THE COURT] And did you have an opportunity to discuss it with your attorney?

[PERNA] Yes, I did.

[THE COURT] And did he explain it to you?

[PERNA] Yes, he did.

[THE COURT] And answer all your questions about it?

[PERNA] Yes, he did.

[THE COURT] Now, with the comments of the Government, that are on the record this morning, those comments together with the written plea agreement, do they together fairly and accurately state your agreement with the Government?

[PERNA] *Yes, it does.*

[THE COURT] *Do you agree with all those terms?*

[PERNA] *Yes, I do.*

[THE COURT] Is there anything that has been omitted, that hasn't been filled in this morning by the comments of Miss Buchanan?

[PERNA] No.

[THE COURT] *Is there anything included that should be deleted, either in her comments or in the written plea agreement?*

[PERNA] *No.*

[THE COURT] So you agree with its terms, correct?

[PERNA] Yes, sir.

[THE COURT] *It fairly and accurately states your agreement with the Government then?*

[PERNA] *Yes, sir.*

[THE COURT] All right.

Now, did you sign it voluntarily?

[PERNA] Yes, I did.

[THE COURT] Anybody force you to sign it?

[PERNA] No, sir.

[THE COURT] Anybody threaten to make you sign it?

[PERNA] No.

[THE COURT] *Other than the agreement you have with the Government, has anybody offered you any other promises*

*or inducements to have you enter into this agreement?*

[PERNA] *No. sir.*

[THE COURT] *Again. you did so voluntarily?* [PERNA] *Yes, sir.*

RICO Plea Tr. at 15–17 (emphasis added).

If Perna was unclear about anything in the RICO Plea Agreement, including the reservation by the Government to move for consolidation and for consecutive sentences, he had a full and fair opportunity to raise it at the RICO Plea Hearing.

Perna also submitted an affidavit from Feinstein's former secretary to illustrate that Feinstein promised him a sentence of twenty years if Perna entered a guilty plea. *See* Affidavit of Nicoliena Santoro (the "Santoro Affidavit"), attached as Exhibit B to the Callaghan Cert. The Santoro Affidavit states: "During the course of his representation of [Perna], [Feinstein] represented to and promised [Perna] that [Perna] would not serve in excess of twenty (20) years in prison for all the crimes to which he had pled guilty." Santoro Affidavit, ¶ 6. Perna's admissions at the Rico Plea Hearing, however, demonstrate he understood the Plea Agreement and was aware his sentences on the Gambling Indictment and the RICO Indictment could run consecutively. Accordingly, Perna has failed to establish he received ineffective assistance of counsel with regard to entry of the PICO Plea.

### C. *Consolidation*

▆ Perna also argues his counsel was ineffective in consolidating the Gambling-Case and the RICO Case for sentencing. *See* Reply Brief at 9. Perna contends consolidation prevented him from arguing for con-

current sentences on the two charges. *See id.* at 10 (citing U.S.S.G. § 5G1.2(d)[4] ("Section 5G1.2(d)")).

Perna argues that, had the Gambling Case and the RICO Case not been consolidated, he would have had the opportunity to at least argue for concurrent sentences on the two charges, pursuant to U.S.S.G. § 5G1.3(b)[5] ("Section 5G1.3(b)"). *See* Reply Brief at 11. Perna contends Feinstein's failure to oppose consolidation amounted to ineffective assistance of counsel. *See* Reply Brief at 9 (citing Rule 11(E)[6] of the Rules for the District of New Jersey (motion for consolidation of criminal matters must be made to the Chief Judge of the District)). Perna, therefore, argues that, had he known he faced twenty-five years in prison as opposed to twenty years, he would have not agreed to the consolidation of the two cases for the purpose of sentencing. As with Perna's other arguments, however, the record indicates he was aware of the sentencing exposure created by consolidation.

At the Consolidated Sentencing Hearing, Feinstein addressed the issue of consolidation and indicated he and his client understood the Government would move for consecutive sentences on the Gambling Case and the Rico Case. *See* Consolidated Sentencing Tr. at 6. Feinstein stated:

> Clearly at the time that the plea was entered before your Honor, ... the defense reserved the right and the Government reserved their right to ask for the 25 and the defense was going to argue that, in fact, the appropriate should be a 20–year sentence here rather than 25. I just would address that for a few moments.

---

**4.** Section 5G1.2(d) reads:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law. *Id.*

**5.** Section 5G1.3(b) reads:

> If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
>
> *Id.*

**6.** On 1 April 1997, the United States District Court for the District of New Jersey renumbered its local rules. Rule 11(E) is now Rule 18.1. No substantive changes were made to the rule.

That was also the defendant's impression of the plea. We respectfully urge, Judge, without being presumptuous or usurping the Court's function that, in fact, the gambling count run concurrent with or be merged with the RICO information plea.

Consolidated Sentencing Tr. at 6. As indicated, at the RICO Plea Hearing, Perna specifically stated he read and understood the RICO Plea Agreement and that it accurately reflected his agreement with the Government. From the record, then, it appears Perna was aware the Government planned to ask for the twenty-five-year sentence at sentencing and the defense would argue for a twenty-year sentence regardless of any out-of-court promises. Perna was aware that his exposure at sentencing could be twenty-five years and he consented to consolidation aware his two sentences could run consecutively.

Further, when given an opportunity to speak at the Sentencing Hearing, Perna did not indicate he had an understanding that his exposure was twenty years instead of twenty-five years:

[THE COURT] Thank you.

Mr. Perna, this is your opportunity to speak with me. Is there anything you would like to say?

[PERNA] I ask if I can stay close for my family's sake.

[THE COURT] Anything else?

[PERNA] [Feinstein] mentioned something about soldier.[7] -I don't know what [Feinstein's] talking about as far as that goes.

[FEINSTEIN] That meant he that he was, in fact, following orders according to Government's contention.

[THE COURT] Nothing else. [PERNA] Nothing else.

Consolidated Sentencing Tr. at 19. This exchange occurred after the rulings had been made on Perna's argument that the sentences should run concurrently and Perna

was fully aware that he could face twenty-five years in prison on the charges. Had Perna relied upon the alleged statement of his counsel that he would only receive twenty years in prison, he could, and should, have raised it at this point. In fact, Perna did not hesitate to address the court with regard to other comments made by his attorney or to request that he be incarcerated near his family. The record, therefore, indicates that Perna was aware of his exposure and his agreement to consolidation was not involuntary. Perna's allegations do not entitle him to habeas relief.

Finally, with regard to Rule 11(E)[8], had consolidation not occurred and Perna had faced separate sentencings, Perna could still have received consecutive sentences on both the Gambling Indictment and the RICO Indictment. *See* U.S.S.G. § 5G1.3(c). Perna would almost certainly have been sentenced on the Gambling Indictment first. *See* Gambling Plea Tr. at 41 (setting the Gambling Plea sentencing for 24 September 1993); Sentencing Tr. at 7 (indicating the other defendants involved in the Gambling Case had already been sentenced).

At the Gambling Plea Hearing, the sentencing of Michael Perna was adjourned, at his request, until after the scheduled trial in the RICO Case. As indicated, Perna was not sentenced until 25 July 1994. Accordingly, had the two cases not been consolidated for sentencing, the sentencing in the RICO Case would almost certainly have been second.

If Perna had been separately sentenced on the RICO Indictment, he would have received consecutive sentences. U.S.S.G. § 5G1.3(c) ("Section 5G1.3(c)") provides "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." Section 5G1.3(c) leaves it within the discretion of the District court judge to apply either a concurrent or consecutive sentence. *See*

---

7. Perna's reference to soldier is in response to comments made by Feinstein that Perna was "a soldier following orders." *Sentencing Tr.* at 18.

8. It also appears the decision to consolidate could have been a tactical move by Feinstein because he argued for grouping of the Gambling and Rico Act charges. *See* Sentencing Tr. at 12.

*United States v. Spiers,* 82 F.3d 1274, 1275 (3d Cir.1996).

As indicated, Perna had a long history of violent criminal activity. He was a "made" member of the New Jersey Faction of the Lucchese crime family. He specifically admitted to involvement in conspiracies which resulted in the murders of seven people. He admitted to conspiracies to murder others as well. Because this court would have sentenced Perna on the RICO Indictment after he was sentenced in the Gambling Case, this court would have the discretion to impose concurrent or consecutive sentences. If this had been the case, based upon his criminal history and upon the crimes at issue, Perna would have been sentenced to consecutive sentences. Accordingly, he is not able to demonstrate prejudice resulting from the consolidation.

*Conclusion*

Fox the foregoing reasons, the Habeas Petition is denied; there is no possible cause for appeal.